IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DAVID CABLE, M.D., *Plaintiff*, v. PROASSURANCE CASUALTY COMPANY, *Defendant*. | NO. 3:21-CV-50248 HON. IAIN D. JOHNSTON |

### MEMORANDUM OPINION AND ORDER

Plaintiff David Cable brings this action against Defendant ProAssurance Casualty Company ("ProAssurance"), which provided him malpractice insurance. Dr. Cable argues that ProAssurance acted in bad faith and breached its duty to him by rejecting a settlement offer when he was named as a defendant in a medical malpractice action. ProAssurance now moves for summary judgment. For the following reasons, the motion is granted.

### LEGAL STANDARD

#### I. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the nonmovant, construing the evidence and all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir.

1

2008). However, the Court need not draw every conceivable inference, only reasonable ones. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005). And "[s]peculation is insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996). Indeed, "the nonmoving party 'must do more than simply show there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## II. Local Rule 56.1

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Factual allegations "should not contain legal argument," and responses "may not set forth any new facts." LR 56.1(d)(4), (e)(2). "District courts are 'entitled to expect strict compliance' with Rule 56.1, and do not abuse their discretion when they opt to disregard facts presented in a manner that does not follow the rule's instructions." *Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities.").

## BACKGROUND

Dr. Cable is a medical doctor who was insured under a professional liability insurance policy that ProAssurance issued to Rockford Surgical Service, S.C. Dkt. 70 ¶¶ 1-

2. The insurance policy had separate liability limits of $1 million for Dr. Cable and Rockford Surgical Service (per incident). *Id.* ¶ 8. Dr. Cable and Rockford Surgical Service were named as defendants in a wrongful death and survival action; ProAssurance was notified of the lawsuit in August 2013. *Id.* ¶¶ 1, 11. After Dr. Cable spoke with a few different defense attorneys, he agreed to ProAssurance assigning his case to Douglas Pomatto and Michael Denning. *Id.* ¶¶ 7, 13. On June 27, 2019, the plaintiff in the underlying survival action made a settlement demand of $2 million; ProAssurance rejected it, stating in a letter that Dr. Cable didn't consent to settlement of the matter and that they believed the case to be defensible. *Id.* ¶¶ 36; Dkt. 81 ¶ 32; Dkt. 90 ¶ 32. The trial resulted in a verdict against Dr. Cable, with an award of over $3.6 million. Dkt. 81 ¶ 36; Dkt. 90 ¶ 36.

## ANALYSIS

This action is premised on Dr. Cable's argument that ProAssurance acted in bad faith in rejecting the settlement demand. "In Illinois, an insurer has a duty to act in good faith when responding to a settlement offer." *Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp.*, 922 F.3d 778, 784-85 (7th Cir. 2019). A bad-faith claim against the insurer requires three elements: "[1] the duty to settle arose; [2] the insurer breached the duty; and [3] the breach caused injury to the insured." *Id.* (quoting *Haddick ex rel. Griffith v. Valor Ins.*, 763 N.E.2d 299, 304 (Ill. 2001)). "When an insurer is pursued for refusing to settle a claim, 'bad faith' lies in its failure to give at least equal consideration to the insured's interests when the insurer arrives at a decision as to whether to settle the claim." *Rogers Cartage Co. v. Travelers Indem. Co.*, 103 N.E.3d 504, 525-26 (Ill. App. Ct. 2018).

3

ProAssurance doesn't challenge that it had a duty to settle, instead focusing on the factors that Illinois courts have considered in determining whether that duty has been breached.[1] Dr. Cable ignores these factors; his sole argument appears to be that ProAssurance's failed to sufficiently inform him that his personal assets could be at risk—but he provides no supporting authority that this matters for determining whether an insurer acted in bad faith. Although that allows the Court to disregard Dr. Cable's argument, *see United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."), the Court must still determine whether there are genuine disputes of material fact in the record. *See Cooper v. Lane*, 969 F.2d 368, 370 (7th Cir. 1992).

There are seven factors—collected in *O'Neill v. Gallant Insurance Co.*, 769 N.E.2d 100 (Ill. App. Ct. 2002)—that Illinois courts use to decide whether an insurer, acting in bad faith, breached its duty to settle.

---

[1] ProAssurance doesn't contest Dr. Cable's representation that its briefing doesn't dispute that it had a duty to settle, so the Court assumes that the duty arose in this case. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). But two of the factors it discusses in analyzing whether there was a breach are also part of the analysis for whether the duty to settle arose—the likelihood of an adverse verdict and the likelihood of damages that exceed the policy limits. *See Haddick*, 763 N.E.2d at 304-05 (stating that the duty to settle arises requires, among other things, "a reasonable probability of recovery in excess of policy limits" and "a reasonable probability of a finding of liability against the insured"); *Rogers Cartage*, 103 N.E.3d at 525 (listing "potential for an adverse verdict" and "potential for damages in excess of policy limits" as factors for determining bad faith). If an adverse verdict and recovery in excess of policy limits were found to not be reasonably probable, then the analysis could have stopped with finding no duty to settle.

4

I.   Advice from ProAssurance's claim specialists

The first factor examines how the insurer responded to advice from its adjusters. *O'Neill*, 769 N.E.2d at 106 (finding that the insurer ignored recommendations to settle from the claim's adjuster, his supervisor, and a claims director). ProAssurance had two claims specialists that handled the claim against Dr. Cable—Leslie Siebeck and Megan Gibson. Dkt. 70 ¶¶ 4, 6. By the time the settlement demand was made, Ms. Gibson had taken responsibility for handling the lawsuit. *See* Dkt. 70 ¶¶ 35-36. Neither party presents evidence of what Ms. Gibson recommended to ProAssurance regarding the settlement demand. The only evidence of her recommendations to ProAssurance is that she gave a presentation sometime in 2019 (before the case went to trial) to ProAssurance's Claims Review Committee, and they agreed that the case was defensible. Dkt. 70 ¶ 45.[2] Based on this, it's reasonable to infer that Ms. Gibson didn't advise ProAssurance to accept the settlement demand. This factor weighs against a finding of bad faith and in ProAssurance's favor.

II.  Advice from defense counsel

Similarly, there's no evidence that ProAssurance rejected the settlement demand in defiance of a recommendation from defense counsel to accept it. The parties present no evidence of what Mr. Pomatto advised ProAssurance with regard to the settlement demand. The undisputed facts show that Mr. Pomatto never told Ms. Gibson that he thought there was a less than 50 percent chance of success at trial, and he believed

---

[2] The only other evidence of ProAssurance's claim specialists advising it on this matter is Ms. Siebeck's presentation in 2016 to the Claims and Underwriting Committee, which found Dr. Cable's medical care to be appropriate. Dkt. 70 ¶ 31.

5

that they would be successful at trial. Dkt. 70 ¶¶ 46-47. This factor weighs against finding bad faith. *Cf. O'Neill*, 769 N.E.2d at 107 (finding that defense counsel had estimated to the insurer that the verdict would likely be much higher than the policy amount).

### III. Refusal to negotiate

Illinois case law isn't very helpful in determining which way this factor cuts. In *O'Neill*, the insurer showed its refusal to negotiate because it didn't even send a rejection letter. 769 N.E.2d at 107. In *Rogers Cartage*, the evidence showed that the insurer participated in settlement negotiations. *See* 103 N.E.3d at 514. This case lies somewhere in the middle—ProAssurance rejected the settlement demand via a rejection letter, but it didn't make any counteroffers or engage in further negotiations.

ProAssurance claims that it did so because Dr. Cable never consented to settlement. It's undisputed that Dr. Cable wrote in an email, "I also have no intention of settling ahead as feel everything is defensible." Dkt. 70 ¶ 39. Dr. Cable also met with Mr. Pomatto, Mr. Denning, and Ms. Gibson on July 23, 2019, during which they discussed the settlement demand and Dr. Cable maintained that he didn't want to settle because he thought his conduct was defensible. Dkt. 90 ¶ 25. Dr. Cable, however, argues that the discussion wasn't as thorough as it should have been—specifically, he asserts that he didn't think they came to a final decision on how to handle the settlement demand and that he wasn't properly reminded of the risk to his personal assets if they rejected the settlement demand. Dkt. 81-8 at 40:24-43:19; *see* Dkt. 82

6

¶ 41.³ Although the parties dispute the nature of the discussion, no reasonable jury could infer from Dr. Cable's deposition testimony that ProAssurance rejected the settlement in spite of his wishes to the contrary; the dispute is whether ProAssurance acted in bad faith by not having a more fulsome discussion after Dr. Cable expressed that he didn't want to settle. *Cf. Haas v. Mid America Fire & Marine Ins. Co.*, 343 N.E.2d 36, 39 (Ill. App. Ct. 1976) (stating that insurance companies are not required to make settlement offers that clearly won't be accepted). With little on the record about what was actually said during the discussion, it requires speculation to infer that ProAssurance unilaterally decided to reject the settlement. This factor doesn't weigh in favor of finding bad faith.

### IV. Keeping Dr. Cable aware of the plaintiff's willingness to settle for an amount within the policy limit

Other courts that have considered this factor have been concerned with whether the insured was informed of a settlement offer at all. *See, e.g.*, *O'Neill*, 769 N.E.2d at 107; *Bailey v. Prudence Mut. Cas. Co.*, 429 F.2d 1388, 1390 (7th Cir. 1970). That wasn't the case here—the undisputed evidence shows that Dr. Cable had been informed of the settlement demand. Dkt. 70 ¶¶ 37-38. This factor weighs in ProAssurance's favor.

---

³ Dr. Cable also provides an expert, who opined that ProAssurance's communication on this front fell below "generally accepted standards" in the insurance industry. Dkt. 81-6 at 3-5. But Dr. Cable provides no case law that would help the Court understand how falling below professional standards relates to the determination of bad faith in this case. For example, when assessing deliberate indifference under the Eighth Amendment, an expert's opinion that a doctor acted unreasonably is "only weakly probative" of whether the doctor had a culpable mental state. *Zaya v. Sood*, 836 F.3d 800, 807 (7th Cir. 2016).

7

## V.  Inadequate investigation and defense

The parties provide few, if any, substantive details for the Court to assess this factor. The undisputed facts show that ProAssurance promptly retained counsel for Dr. Cable's defense, had numerous meetings with Dr. Cable to discuss the case, and retained medical experts in Dr. Cable's defense. Dkt. 70 ¶¶ 12-14, 18-30, 32-34. Dr. Cable doesn't raise anything like the deficiencies in *O'Neill*, where defense counsel didn't take steps to preserve evidence needed at trial and the insurer authorized fewer depositions than recommended by defense counsel. 769 N.E.2d at 107-08. Dr. Cable's only criticism of ProAssurance's defense is that ProAssurance didn't ensure Dr. Cable understood the risk to his personal assets by continuing to pursue trial instead of taking the settlement demand, but that allows for no reasonable inferences regarding the quality of Mr. Pomatto's defense. This factor weighs against a finding of bad faith, though perhaps not as strongly as some of the other factors given the lack of substantive information.

## VI.  Substantial prospect of an adverse verdict and potential for damages to exceed policy limits

The Court analyzes the final two factors together because they are related. Like the previous factor, the parties don't explain the substantive merits of the underlying action for the Court to assess the probability of an adverse verdict and damages in excess of policy limits. ProAssurance relies on the belief from defense counsel that a verdict in their favor was more likely than not. Dkt. 70 ¶ 46.

Dr. Cable hints at there being signs that damages could have exceeded policy limits, but he doesn't discuss any specifics of the underlying lawsuit for the Court to

8

understand how this might affect the chances of an adverse verdict. For example, the report from defense counsel noting that the cardiothoracic expert they consulted "concluded that the case could be defended despite what might be termed as certain 'gray areas,'" Dkt. 81 ¶ 12, indicates that defense counsel still believed they would prevail at trial. Or take the letter in which Mr. Pomatto identified a new potential theory of liability from the plaintiff based on a recent deposition, Dkt. 90 ¶ 16—there's nothing to show whether this new theory was a potential crack in their defense or just another unavailing theory. Dr. Cable also claims that the plaintiff in the underlying case thought it would obtain an excess verdict, but he provides no citation to the record for this proposition.

This factor weighs in favor of ProAssurance, albeit weakly because of the sparse record on the issue.

## CONCLUSION

Based on the record before the Court, no reasonable jury could find that ProAssurance acted in bad faith by rejecting the settlement demand, even if it could have done a better job keeping Dr. Cable apprised of the risk to his personal assets. The motion for summary judgment is granted, and the case is dismissed with prejudice.

Date: May 21, 2024

HON. IAIN D. JOHNSTON
*United States District Judge*

9